591 A.2d 592

MURRELL WATKINS AND ABRAHAM MCDANIEL, PLAINTIFFS–
APPELLANTS, v. RESORTS INTERNATIONAL HOTEL AND
CASINO, INC., DEFENDANT–RESPONDENT, AND BALLY'S
PARK PLACE CASINO, ALAN MCCLAIN, EUGENE MCDER-
MOTT, N.J. DEPARTMENT OF TRANSPORTATION, AND
FRANK FITZSIMMONS, DEFENDANTS.

Argued January 3, 1991—Decided June 11, 1991.

400

*Arnold S. Cohen* argued the cause for appellants (*Balk, Oxfeld, Mandell and Cohen,* attorneys).

*William M. Honan* argued the cause for respondent (*Horn, Kaplan, Goldberg, Gorny & Daniels,* attorneys; *Joseph G. Antinori,* on the brief).

The opinion of the Court was delivered by

POLLOCK, J.

This appeal concerns the preclusive effect of a federal judgment in a state court. Specifically, it requires us to decide whether state law claims brought in a state court are precluded by a prior federal court judgment dismissing federal law claims based on the same facts, if the federal claims were dismissed for insufficient service of process and for lack of standing.

Plaintiffs, Murrell Watkins and Abraham McDaniel and their wholly-owned companies, sued Resorts International (Resorts), Bally's Park Place Casino (Bally's), and other defendants in federal district court, claiming that as minority bus-line owners they had been the targets of discriminatory practices. The claims, which sought relief pursuant to 42 *U.S.C.* sections 1981, 1983, 1985(3), and 1988, were dismissed on motion for various reasons, including insufficient service of process and lack of standing.

Relying on state law, Watkins and McDaniel then filed this action in the Superior Court based on the same allegations of discrimination that underlay their federal claims. The Law Division granted defendants' motion to dismiss, *R.* 4:6-2(e), on the ground that plaintiffs were barred by the entire controversy doctrine from relitigating the same cause of action that had already been decided in federal court. See *R.* 4:30A (formerly *R.* 4:27-1(b)). In an unreported decision, the Appellate Division affirmed on grounds of res judicata, collateral estoppel, and the entire controversy doctrine. We granted certification, 122 *N.J.* 195, 584 *A.*2d 253 (1990), and now reverse the judgment of the Appellate Division and remand the matter to the Law Division. Although state courts must honor judgments of federal courts, dismissals for insufficient service of process or lack of standing do not preclude relitigation. Consequently, the federal judgments against Watkins and McDaniel do not bar their state claims.

-I-

For purposes of this appeal, we accept the facts as alleged in the complaint. *Heavner v. Uniroyal, Inc.,* 63 *N.J.* 130, 133, 305 *A.*2d 412 (1973). Plaintiff Watkins and his wife were the sole shareholders in Ocean Breeze Transit Company (Ocean Breeze), a bus company that operated service to Atlantic City casinos. Plaintiff McDaniel owned Cobra Coach Lines, Inc. (Cobra), which also operated bus service to Atlantic City. Plaintiffs, who are black, allege that Resorts and Bally's discriminated against them by interfering with their efforts to operate bus lines to the casinos.

In 1982 Resorts granted Ocean Breeze permission to provide bus service to its casino. When the first Ocean Breeze bus arrived, however, a casino representative told the driver that the buses should not return because they were too old and dirty. According to Watkins, Resorts executive Alan McClain later told Watkins: "[J]ust because you niggers get a license

and buses, we do not have to let you into the casino." Finally, McClain informed Watkins that Ocean Breeze would not be allowed to service Resorts unless it used buses less than two years old. Resorts, however, continued to allow white-owned bus companies with older buses to provide transportation to the casino.

Watkins alleges that Bally's also discriminated against him. When Watkins began servicing the casino around 1980, McClain was Bally's project manager. According to Watkins, McClain and another Bally's executive, Eugene McDermott, helped several white-owned bus companies to usurp Watkins's designated territories. Claiming that these companies had failed to comply with licensing requirements, Watkins notified defendant Frank Fitzsimmons of the New Jersey Department of Transportation (DOT), but Fitzsimmons took no action. Watkins alleges that Fitzsimmons's failure to take action "eventually resulted in the revocation of his line run from Cape May to [Resorts and Bally's]." He alleges further that because of defendants' discrimination, he and his wife were forced to mortgage their home and sell their Ocean Breeze shares to avoid personal bankruptcy.

McDaniel alleges that he was the victim of similar racial discrimination. Resorts denied his request for Cobra to provide transportation because it did not want black groups coming to the casino. White-owned companies, however, were subsequently permitted to provide transportation from the same sites. When McDaniel later sought permission to operate new lines from Harlem and the South Bronx, McClain allegedly told him that the people from those neighborhoods were not the type of people Resorts wanted in its casino.

McDaniel further alleges that when he sought to establish a line from Harlem and the South Bronx to Bally's, McClain told him that lines from those neighborhoods were undesirable. According to McDaniel, McDermott said he was concerned about the number of blacks in the casino. Bally's, however,

later granted permission for a white-owned company to service those areas. McDaniel alleges that as a result of defendants' discrimination, he lost his investment in Cobra and was forced to declare personal bankruptcy.

On August 27, 1984, Watkins, McDaniel, Ocean Breeze, and Cobra filed suit in the United States District Court for the District of New Jersey, claiming civil rights violations under 42 *U.S.C.* sections 1981, 1983, 1985(3), and 1988. The complaint named the same defendants as in the instant matter: Resorts, Bally's, McClain, McDermott, the DOT, and Fitzsimmons. Plaintiffs did not assert any pendent state claims. Eventually, the federal court dismissed all of the claims. First, on June 12, 1985, the court dismissed plaintiffs' section 1983 claim. Plaintiffs stipulated to a dismissal with prejudice of their section 1985 claim, leaving only the section 1981 claim and the derivative section 1988 claim for attorneys' fees. Then, on November 27, 1985, the court dismissed the complaint against Bally's for insufficient service of process under *Federal Rule of Civil Procedure* 4(j). Specifically, the court dismissed the complaint without prejudice because plaintiffs had failed to serve the summons and complaint on Bally's within 120 days of filing the complaint, contrary to *Federal Rule of Civil Procedure* 4(j). Plaintiffs voluntarily dismissed their complaint against DOT.

Most significantly for our purposes, the district court on November 27, 1985, granted Resorts' motion to dismiss the complaint of the individual plaintiffs, Watkins and McDaniel, because they lacked standing to sue. Relying on federal law, the court explained that a shareholder, even a sole shareholder such as McDaniel, cannot maintain a civil rights action to redress damages suffered by a corporation. The court held that Watkins' sale of his Ocean Breeze stock did not confer standing on him to maintain such an action. The United States Court of Appeals for the Third Circuit affirmed the judgment dismissing the individual plaintiffs' claims. In an order dismissing the remaining counts, the district court stated:

> It appearing that it has been reported to the Court by plaintiffs' counsel that plaintiffs do not wish to proceed any further in this matter;
>
> It is on this 27th day of May, 1987, ORDERED that this action is hereby DISMISSED with prejudice.

Plaintiffs did not appeal from that order.

Shortly thereafter, Watkins and McDaniel brought suit in the Law Division. As in the federal action, they claimed that as minority bus-line owners they were the targets of discrimination by the two casinos, their employees, and DOT. Plaintiffs alleged the same facts as those in their federal complaint. Instead of alleging violations of federal anti-discrimination laws, however, plaintiffs founded their claims entirely on state law, asserting violations of article I, paragraph 1 of the New Jersey Constitution; the Casino Control Act, *N.J.S.A.* 5:12–1 to –190, *N.J.S.A.* 5:12–135; and the New Jersey Law Against Discrimination, *N.J.S.A.* 10:5–1 to –42.

Resorts moved to dismiss the complaint, arguing that the entire controversy doctrine, res judicata, or collateral estoppel precluded plaintiffs' action. It argued that no private cause of action existed under the Casino Control Act. The court agreed that the state cause of action was essentially the same as the federal action, and that the entire controversy doctrine barred plaintiffs from relitigating the matter. The trial court therefore granted the motion to dismiss. As to DOT, the court dismissed plaintiffs' complaint for failure to state a claim.

Before the Appellate Division, plaintiffs argued that the federal court had not determined the matter on its merits and that therefore neither res judicata, collateral estoppel, nor the entire controversy doctrine should bar the state court action. The Appellate Division disagreed, and affirmed the dismissal. As to Resorts, the court viewed the dismissal for lack of standing as a resolution on the merits, stating that the district court's "holding was that the claims which the individual plaintiffs were asserting belonged solely to their corporations and, therefore, the individuals were not entitled to redress." The court held that plaintiffs' claims against Resorts were barred

by res judicata or collateral estoppel. As to Bally's, the court affirmed the dismissal on the ground of the entire controversy doctrine. The court determined that although the federal dismissal for insufficient service of process was not on the merits and therefore did not itself preclude the state suit, Bally's was a necessary party and the dismissal of the federal suit against Resorts barred a later action against Bally's.

-II-

A fundamental feature of the relationship between state and federal courts is that the courts of each system must respect the judgments of courts of the other system. That respect is essential to the fair and efficient functioning of our federalist system of justice. The rule that state courts must accord preclusive effect to prior federal court judgments is so settled that it is accepted as axiomatic. *Younger v. Jensen*, 26 *Cal.*3d 397, 411, 605 *P.*2d 813, 822, 161 *Cal.Rptr.* 905, 914 (1980); *Pilié & Pilié v. Metz*, 547 *So.*2d 1305, 1308–09 (La.1989); *Velasquez v. Franz*, 123 *N.J.* 498, 506–08, 589 *A.*2d 143, 147–48 (1991); *Bardo v. Commonwealth Dep't of Pub. Welfare*, 40 *Pa.Commw.* 585, 587–89, 397 *A.*2d 1305, 1307 (1979); *see also* Degnan, *Federalized Res Judicata*, 85 *Yale L.J.* 741, 744–45 n. 17 (1976) (citing early state cases reciting the rule). This case requires that we search for the reasons beneath the rule.

Our inquiry begins with the full faith and credit clause of the United States Constitution, which provides that "[f]ull Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." *U.S. Const.* art. IV, § 1. That clause directs the courts of each state to give preclusive effect to the judgments of a sister state. The clause, however, does not expressly require state courts to accept the judgments of a federal court.

Nor does the federal full faith and credit statute, 28 *U.S.C.A.* § 1738, impose that requirement. The statute provides that

judicial proceedings [of any State, Territory or Possession of the United States] * * * shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

Because they are included in "every court within the United States," federal courts are required to give full faith and credit to the judgments defined in the statute. The judgments so defined, however, are those "of any State, Territory, or Possession of the United States," not those of the federal courts. Thus, the statute does not compel state courts to give preclusive effect to judgments of the federal courts. In sum, neither the constitutional full faith and credit clause nor the corresponding federal statute solves the problem.

Some older cases purported to find the answer in the full faith and credit clause of the federal constitution. *See Bigelow v. Old Dominion Copper Mining & Smelting Co.,* 225 *U.S.* 111, 129, 32 *S.Ct.* 641, 643, 56 *L.Ed.* 1009, 1022 (1912) (addressing federal-state preclusion issue as one governed by the full faith and credit clause and its implementing statute, and holding that a federal court judgment "is entitled to the same sanction which would attach to a like judgment of a court of the state"); *National Foundry & Pipe Works v. Oconto City Water Supply Co.,* 183 *U.S.* 216, 233, 22 *S.Ct.* 111, 118, 46 *L.Ed.* 157, 169 (1902) (holding that state court's failure to give due effect to federal court decree raises federal question, citing, *inter alia, Jacobs v. Marks,* 182 *U.S.* 583, 587, 21 *S.Ct.* 865, 867, 45 *L.Ed.* 1241, 1244 (1901), a state-state interjurisdictional preclusion case based on the full faith and credit clause); *Hancock Nat'l Bank v. Farnum,* 176 *U.S.* 640, 645, 20 *S.Ct.* 506, 507–08, 44 *L.Ed.* 619, 621 (1900) (reciting the constitutional and statutory full faith and credit rule for state-state preclusion, and then stating that "[t]he fact that this judgment was rendered in a court of the United States, sitting within the state of Kansas, instead of one of the state courts, is immaterial"). Courts also looked to the federal full faith and credit statute or its predecessor. *See Bigelow, supra,* 225 *U.S.* at 133, 32 *S.Ct.* at 643, 56 *L.Ed.* at 1023; *Hancock Nat'l Bank, supra,* 176 *U.S.*

at 642, 20 *S.Ct.* at 507–08, 44 *L.Ed.* at 620; *Embry v. Palmer,* 107 *U.S.* 3, 2 *S.Ct.* 25, 30–31, 27 *L.Ed.* 346, 348–49 (1883); *see also Supreme Lodge, Knights of Pythias v. Meyer,* 265 *U.S.* 30, 33, 44 *S.Ct.* 432, 433, 68 *L.Ed.* 885, 888 (1924) (citing *Hancock Nat'l Bank* and *Embry v. Palmer* for rule of federal-state preclusion); *Hazen Research, Inc. v. Omega Minerals, Inc.,* 497 *F.*2d 151, 153 n. 1 (5th Cir.1974) (courts have read "into § 1738 a requirement that state courts extend full respect to the judgments of federal judicial tribunals within the states"); *Shell Oil Co. v. Texas Gas Transmission Corp.,* 176 *So.*2d 692, 696 (La.Ct.App.1965) ("The statute, 28 U.S.C. § 1738, requires each state to give the same effect to the judgments of state and federal courts as those judgments have in the jurisdiction where rendered."). As previously noted, however, neither the full faith and credit clause of the Constitution nor the corresponding federal statute applies. In brief, positive law does not expressly mandate that state courts give preclusive effect to the judgments of federal courts.

Generally without analysis, state courts have accepted federal court judgments as binding. Degnan, *supra,* 85 *Yale L.J.* at 744 n. 17. In the absence of any such analysis, respected scholars have theorized about the basis for the preclusive effect in state courts of federal court judgments. For example, Professor Charles Alan Wright, drawing on an explanation of Professor Ronan Degnan, states:

> Article III limits the federal judicial power to cases and controversies. To decide a case or controversy implies some binding effect. Proceedings that do not have at least the potential effect of precluding later relitigation of the same claims and issues would constitute something other than the exercise of the judicial power. Once it is accepted that Article III and its implementing legislation have created courts with the power to issue judgments that will have preclusive effects in other litigation, the Supremacy Clause of Article VI mandates that those preclusive effects are binding on state courts.
>
> [C. Wright, *The Law of Federal Courts* 694–95 (4th ed. 1983) (citing Degnan, *supra,* 85 *Yale L.J.* at 742–49, 768–69).]

*See also* Degnan, *supra,* 85 *Yale L.J.* at 772–73 (federal-state preclusion "will have to be placed forthrightly on the ground that the integrity of the federal judicial power is at stake"); *cf.*

Burbank, *Interjurisdictional Preclusion, Full Faith and Credit and Federal Common Law: A General Approach,* 71 *Cornell L.Rev.* 733, 753–55 & n. 92 (1986) (questioning how far Professor Degnan's article III analysis can go, but acknowledging article III's significance in imposing basic obligation to respect federal judgments). Professor Wright's analysis echoes the earlier analysis in *Dupasseur v. Rochereau,* 88 *U.S.* (21 Wall.) 130, 22 *L.Ed.* 588 (1875), in which the United States Supreme Court held that a state court's failure to honor a federal court judgment constituted a federal question triggering the jurisdiction of the Supreme Court.

By insulating courts from the relitigation of claims, res judicata prevents the judicial inefficiency inherent in multiplicitous litigation. At some point litigation over a particular controversy should end. *See Velasquez, supra,* 123 *N.J.* at 505, 589 *A.*2d at 147; *Restatement (Second) of Judgments* § 19 comment a (1982). By preventing harassment of parties, preclusion serves the interest of fairness. Preclusion further protects the integrity of the judgments of state and federal courts. The strength of a judgment derives from the expectation that it will be binding. Essential to the proper functioning of state and federal courts is the principle that a disappointed litigant may not circumvent a judgment entered in one system by relitigating the claim or the decided issues in the other system. Generally speaking, whether started in state or federal courts, the determination of a case in one system should conclude the matter.

Beyond the general policy favoring finality, interjurisdictional preclusion serves the vital function of unifying the nation. The United States Supreme Court, this Court, and scholars have recognized that the full faith and credit clause, by obliging each state to enforce the judgments of another state, fulfills this function. As the United States Supreme Court has written,

[t]he full faith and credit clause like the commerce clause thus became a nationally unifying force. It altered the status of the several states as independent foreign sovereignties, each free to ignore rights and obligations

created under the laws or established by the judicial proceedings of the others, by making each an integral part of a single nation, in which rights judicially established in any part are given nation-wide application.

[*Magnolia Petroleum Co. v. Hunt,* 320 *U.S.* 430, 439, 64 *S.Ct.* 208, 214, 88 *L.Ed.* 149, 155–56 (1943).]

See *Borys v. Borys,* 76 *N.J.* 103, 109–11, 386 *A.*2d 366 (1978); Reese & Johnson, *The Scope of Full Faith and Credit to Judgments,* 49 *Colum.L.Rev.* 153, 161 (1949) (the framers of the full faith and credit clause intended "to give us the benefits of a unified nation by altering the status of otherwise 'independent, sovereign states' ") (quoting *Sherrer v. Sherrer,* 334 *U.S.* 343, 355, 68 *S.Ct.* 1087, 1093, 92 *L.Ed.* 1429, 1438 (1948)).

Just as cohesion between state courts is necessary for national unity, cohesion between state and federal courts is necessary for the continuing vitality of the federalist system. Maintaining a cohesive federal system requires not only that federal courts honor state court judgments, as mandated by 28 *U.S.C.* § 1738, but also that state courts honor federal court judgments. *See Mobil Oil Corp. v. Shevin,* 354 *So.*2d 372, 375–76 (Fla.1977). As we said in *Velasquez, supra,* 123 *N.J.* at 512, 589 *A.*2d at 151, "[w]e would not approve a federal court's decision to ignore a judgment of our trial court. We will not embrace the opposite course here."

Plaintiffs ordinarily have one chance to prove their case. Overlapping jurisdiction frequently gives plaintiffs the option of suing in either the state or the federal system. The availability of alternative forums should not give plaintiffs the additional luxury of suing first in one system and then in the other.

■ When a state court considers the binding effect of a federal court judgment, nothing less is at stake than the integrity of federal judicial power and the coherence of the federalist judicial system. *See* Degnan, *supra,* 85 *Yale L.J.* at 773. So viewed, state courts are bound by federal court judgments, just as they are bound by the judgments of sister states. Consequently, a cause of action finally determined on the

merits by a competent federal court cannot be relitigated by the same parties or their privies in a state court.

We now consider the question of what law governs the preclusive effect of a federal judgment in state court. In general, the binding effect of a judgment is determined by the law of the jurisdiction that rendered it. *Restatement (Second) of Conflict of Laws* § 95 comment e (1971). This rule applies not only when considering the preclusive effect of a judgment of one state court on the courts of another state, but also when determining the preclusive effect in a state court of a federal court judgment. *Blonder–Tongue Laboratories, Inc. v. University of Ill. Found.*, 402 *U.S.* 313, 324 n. 12, 91 *S.Ct.* 1434, 1440 n. 12, 28 *L.Ed.*2d 788, 797 n. 12 (1971); *Stoll v. Gottlieb*, 305 *U.S.* 165, 170–71, 59 *S.Ct.* 134, 137, 83 *L.Ed.* 104, 108 (1938); *Deposit Bank v. Frankfort*, 191 *U.S.* 499, 520, 24 *S.Ct.* 154, 159–60, 48 *L.Ed.* 276, 284 (1903); *In re Energy Coop., Inc.*, 814 *F.*2d 1226, 1230 (7th Cir.), *cert. denied*, 484 *U.S.* 928, 108 *S.Ct.* 294, 98 *L.Ed.*2d 254 (1987); Degnan, *supra*, 85 *Yale L.J.* at 768–70; C. Wright, *supra*, at 695. The *Restatement (Second) of Judgments, supra*, § 87, states the rule plainly: "Federal law determines the effects under the rules of res judicata of a judgment of a federal court."

In principle, the preclusive effect of a judgment is the logical consequence of the procedures of the issuing court. *See id.* Introduction at 6–13. "Within the constitutional limits, the contours of res judicata are determined by the particulars of the opportunity to litigate afforded by the system of procedure in question." *Id.* at 7. The underlying consideration is whether the contending party in the second forum was accorded a "full and fair" opportunity to litigate in the first forum. *Id.* at 9.

It follows that ordinarily a federal court judgment would be neither more nor less binding in the courts of this State than it would be in the federal courts. The reason is that the preclusive effect of the judgment is a function of the procedures of

the federal court that rendered it. *Id.* at 5. These considerations affect the applicability of the entire controversy doctrine, on which the Appellate Division relied. That doctrine, like res judicata, advances the goals of fairness, efficiency, and finality. *Cogdell v. Hospital Center,* 116 *N.J.* 7, 15–17, 560 *A.*2d 1169 (1989); *Ajamian v. Schlanger,* 14 *N.J.* 483, 485, 103 *A.*2d 9, *cert. denied,* 348 *U.S.* 835, 75 *S.Ct.* 58, 99 *L.Ed.* 659 (1954). In limited circumstances, the entire controversy doctrine may preclude an action that is not otherwise precluded by the federal law of res judicata. We note in this context the decision of the Appellate Division in *Blazer Corp. v. New Jersey Sports & Exposition Authority,* 199 *N.J. Super.* 107, 488 *A.*2d 1025 (1985). There, the court relied on the entire controversy doctrine to bar a Superior Court action that "formed the foundation," *id.* at 109, 488 *A.*2d 1025, of a previously dismissed federal action. Our reading of that opinion leads us to conclude that the Appellate Division may not have sufficiently considered the federal law of claim preclusion in resorting to the entire controversy doctrine.

■ We turn therefore to the federal law of claim preclusion. Federal law requires the same three basic elements as New Jersey law: (1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one. *Federated Dep't Stores v. Moitie,* 452 *U.S.* 394, 398, 101 *S.Ct.* 2424, 2428, 69 *L.Ed.*2d 103, 108 (1981); *In re Energy Coop., supra,* 814 *F.*2d at 1230; *see Velasquez, supra,* 123 *N.J.* at 505–06, 589 *A.*2d at 147; *Roberts v. Goldner,* 79 *N.J.* 82, 85, 397 *A.*2d 1090 (1979).

■ Claim preclusion applies not only to matters actually determined in an earlier action, but to all relevant matters that could have been so determined. *Angel v. Bullington,* 330 *U.S.* 183, 192–93, 67 *S.Ct.* 657, 662, 91 *L.Ed.* 832, 838–39 (1947);

*Culver v. Insurance Co. of N. Am.*, 115 *N.J.* 451, 463, 559 *A.*2d 400 (1989). For the purposes of res judicata, causes of action are deemed part of a single "claim" if they arise out of the same transaction or occurrence. *Restatement (Second) of Judgments, supra,* § 24. If, under various theories, a litigant seeks to remedy a single wrong, then that litigant should present all theories in the first action. Otherwise, theories not raised will be precluded in a later action. *Angel, supra,* 330 *U.S.* at 192–93, 67 *S.Ct.* at 662, 91 *L.Ed.* at 838–39; *Cemer v. Marathon Oil Co.,* 583 *F.*2d 830, 832 (6th Cir.1978). Thus, if a federal court in a prior action would have exercised pendent jurisdiction over related state claims that were not asserted, a final judgment on the merits by the federal court precludes raising those claims in a subsequent action in state court. *Federated Dep't Stores, supra,* 452 *U.S.* at 404, 101 *S.Ct.* at 2431, 69 *L.Ed.*2d at 112 (Blackmun, J., concurring); *Harper Plastics, Inc. v. Amoco Chems. Corp.,* 657 *F.*2d 939, 942 (7th Cir.1981); *Browning Debenture Holders' Comm. v. DASA Corp.,* 605 *F.*2d 35, 39 (2d Cir.1978); *Ford Motor Co. v. Superior Court,* 35 *Cal.App.*3d 676, 680, 110 *Cal.Rptr.* 59, 62 (1973); *Belliston v. Texaco,* 521 *P.*2d 379, 382 (Utah 1974).

■ If, on the other hand, a claim could not have been presented in the first action, then it will not be precluded in a later action. The *Restatement (Second) of Judgments* explains:

> When the plaintiff brings an action on the claim in a court, either state or federal, in which there is no jurisdictional obstacle to his advancing both theories or grounds, but he presents only one of them, and judgment is entered with respect to it, he may not maintain a second action in which he tenders the other theory or ground. If, however, the court in the first action would clearly not have had jurisdiction to entertain the omitted theory or ground (or, having jurisdiction, would clearly have declined to exercise it as a matter of discretion), then a second action in a competent court presenting the omitted theory or ground should be held not precluded.
>
> [§ 25 comment e.]

*See also id.* § 26(1)(c) (subject matter jurisdiction exception to rule against claim splitting). If the plaintiffs could not have asserted both state and federal claims in a single forum, it

would be unfair to force them to sacrifice the claims that could not be so asserted in order to bring a single action in one forum.

In the present case, therefore, we must determine whether the federal district court had jurisdiction to entertain plaintiffs' omitted state law claims. A federal court can hear pendent state claims when the state and federal claims "derive from a common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 *U.S.* 715, 725, 86 *S.Ct.* 1130, 1138, 16 *L.Ed.*2d 218, 228 (1966). In cases asserting violations of civil rights, federal courts routinely exercise pendent jurisdiction over state claims. *E.g., Hayden v. Chrysler Corp.*, 486 *F.Supp.* 557, 558 (E.D.Mich.1980). Some scholars believed that the Supreme Court's decision in *Finley v. United States*, 490 *U.S.* 545, 109 *S.Ct.* 2003, 104 *L.Ed.*2d 593 (1989), spelled the demise of pendent and ancillary jurisdiction. See Mengler, *The Demise of Pendent and Ancillary Jurisdiction*, 1990 *B.Y.U.L.Rev.* 247; Perdue, *Finley v. United States: Unstringing Pendent Jurisdiction*, 76 *Va.L.Rev.* 539 (1990). Congress, however, rescued the doctrines by passing the Judicial Improvements Act of 1990. None of this affects our resolution of the present case, however, because the federal action at issue here occurred before *Finley* and the Act.

Here, defendants argue that because plaintiffs could have appended their state claims to the federal action, the federal dismissal precludes presentation of those claims. In reply, plaintiffs argue that the federal court dismissal of their federal claims does not preclude the present action because the federal court would have declined to exercise pendent jurisdiction over their state claims. A federal court may choose not to exercise jurisdiction over pendent state claims when the federal claims have been dismissed before trial. *Gibbs, supra,* 383 *U.S.* at 726, 86 *S.Ct.* at 1139, 16 *L.Ed.*2d at 228. In such a case, perhaps plaintiffs should not be precluded from later asserting their state claims in a state court. *Restatement (Second) of Judgments, supra,* § 25 comment e, illustration 10 (state action

barred "unless it is clear that the federal court would have declined as a matter of discretion to exercise that jurisdiction (for example, because the federal claim, though substantial, was dismissed in advance of trial)"); Note, *The Res Judicata Implications of Pendent Jurisdiction*, 66 *Cornell L.Rev.* 608, 621–24 (1981) (generally, if federal claims dismissed before trial, then later court should presume federal court would not have invoked pendent jurisdiction despite common nucleus of operative fact, and therefore should hold omitted state claims not precluded). We need not decide that issue, however, because we conclude that even if plaintiffs could have asserted all their claims in federal court, the federal court's determination of the federal claims was not of such a nature as to preclude plaintiffs' subsequent assertion of their state claims in the state courts.

Only a judgment "on the merits" will preclude a later action on the same claim. *Federated Dep't Stores, supra*, 452 *U.S.* at 398, 101 *S.Ct.* at 2428, 69 *L.Ed.*2d at 108; *Harper Plastics, supra*, 657 *F.*2d at 943; *see also Restatement (Second) of Judgments, supra*, § 19 comment a ("The prototype case continues to be one in which the merits of the claim are in fact adjudicated against the plaintiff after trial of the substantive issues."). Respected authorities reject the phrase "on the merits" as "question-begging," C. Wright, *supra*, at 679 (quoting Hazard, *Res Nova in Res Judicata*, 44 *S.Cal.L.Rev.* 1036, 1043 (1971)), and "possibly misleading," *Restatement (Second) of Judgments, supra*, § 19 comment a. Because "on the merits" may connote too limited a view of judgments that are entitled to preclusive effect, the *Restatement (Second) of Judgments* avoids the phrase. *Compare Restatement (First) of Judgments* § 48 (1942) ("Where a valid and final personal judgment is rendered on the merits in favor of the defendant, the plaintiff cannot thereafter maintain an action on the original cause of action.") *with Restatement (Second) of Judgments, supra*, § 19 ("A valid and final personal judgment rendered in favor of the defendant bars another action by the

plaintiff on the same claim."). Semantics aside, the rule remains that a dismissal based on a court's procedural inability to consider a case will not preclude a subsequent action on the same claim, *Restatement (Second) of Judgments, supra,* § 19 comment a, § 20, but a judgment can be preclusive even if it does not result from a plenary hearing on the substantive claims. For example, in *Velasquez, supra,* 123 *N.J.* at 514, 589 *A.*2d at 151–52, we recently recognized the preclusive effect of a federal court dismissal based on a dissolved corporation's lack of capacity to be sued, although the federal court did not reach the facts underlying plaintiff's tort claim. In the present case, the issue is whether federal court dismissals for insufficient service of process and lack of standing preclude subsequent actions.

Concerning the dismissal for insufficient service of process; *Federal Rule of Civil Procedure* 4(j) provides that if service is not made on a defendant within 120 days after the filing of the complaint, and no good reason is given for the delay, "the action shall be dismissed as to that defendant without prejudice." *Cf.* Degnan, *supra,* 85 *Yale L.J.* at 763 ("To the extent, then, that the Federal Rules of Civil Procedure do speak about the preclusive effect of federal adjudications, they speak authoritatively, and determinations based upon them are entitled to res judicata effect or full faith and credit. They have been given that effect by state and federal courts alike." (footnote omitted)). Consequently, the November 27, 1985, federal court order dismissing Watkins' and McDaniel's individual claims against Bally's was necessarily "without prejudice."

 Less clear is whether a dismissal for lack of standing is similarly not preclusive. Standing is not listed in *Federal Rule of Civil Procedure* 41(b) as a basis for a dismissal not on the merits. *Rule* 41(b) labels every dismissal as on the merits unless the court specifies otherwise or unless the dismissal is for lack of jurisdiction, improper venue, or failure to join an indispensable party:

Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication on the merits.
[*Fed.R.Civ.P.* 41(b).]

*See also Restatement (Second) of Judgments, supra,* § 20(1) ("A personal judgment for the defendant, although valid and final, does not bar another action by the plaintiff on the same claim: (a) When the judgment is one of dismissal for lack of jurisdiction, for improper venue, or for nonjoinder or misjoinder of parties * * *."). *Rule* 41(b), however, is interpreted pragmatically, not rigidly. As construed by the United States Supreme Court, adjudications not on the merits under *Rule* 41(b) include "those dismissals which are based on a plaintiff's failure to comply with a precondition requisite to the Court's going forward to determine the merits of his substantive claim." *Costello v. United States,* 365 *U.S.* 265, 285, 81 *S.Ct.* 534, 545, 5 *L.Ed.*2d 551, 564 (1961); *see Restatement (Second) of Judgments, supra,* § 20, Reporter's Note at 179–80 (collecting decisions). The import of *Rule* 41(b) is that a federal dismissal constitutes an adjudication on the merits unless the court specifies otherwise or the dismissal is based on a threshold issue concerning the court's ability to proceed to determine the substantive merits of the claim. *Costello, supra,* 365 *U.S.* at 285–88, 81 *S.Ct.* at 544–46, 5 *L.Ed.*2d at 564–66.

Standing is such a threshold issue. It neither depends on nor determines the merits of a plaintiff's claim. *Allen v. Wright,* 468 *U.S.* 737, 750–51, 104 *S.Ct.* 3315, 3324, 82 *L.Ed.*2d 556, 569 (1984) (" 'In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.' " (quoting *Warth v. Seldin,* 422 *U.S.* 490, 498, 95 *S.Ct.* 2197, 2205, 45 *L.Ed.*2d 343, 354 (1975))); *Warth, supra,* 422 *U.S.* at 500, 95 *S.Ct.* at 2206, 45 *L.Ed.*2d at 355 ("standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal"); *Coalition for the Env't v. Volpe,* 504 *F.*2d 156, 168 (8th Cir.1974) (standing "is a threshold inquiry" that "eschews evaluation of the

merits"). Standing, like jurisdiction, involves a threshold determination of the court's power to hear the case. *Sherman v. British Leyland Motors,* 601 *F.*2d 429, 439–40 (9th Cir.1979) (standing issue is "akin to that of jurisdiction").

Although a dismissal for lack of standing may involve considerations similar to those involved in a dismissal for failure to state a claim on which relief can be granted, the two types of dismissals are distinct. Standing involves "limits on the exercise of * * * jurisdiction." *Wright, supra,* 468 *U.S.* at 751, 104 *S.Ct.* at 3324, 82 *L.Ed.*2d at 569; *see also Guarini v. State of N.Y.,* 215 *N.J.Super.* 426, 443, 521 *A.*2d 1362 (Ch.Div.), *aff'd,* 215 *N.J.Super.* 293, 521 *A.*2d 1294 (App.Div.1986), *certif. denied,* 107 *N.J.* 77, 526 *A.*2d 157 *cert. denied,* 484 *U.S.* 817, 108 *S.Ct.* 71, 98 *L.Ed.*2d 34 (1987); R. Williams, *The New Jersey State Constitution: A Reference Guide* 95 (1990) (New Jersey courts impose standing requirement "before litigants may invoke the judicial power of the courts"). A dismissal for lack of standing, like one for lack of jurisdiction, amounts to a refusal by the court to resolve the matter. A dismissal for failure to state a claim, on the other hand, occurs only after the court has agreed to resolve the controversy. *Bell v. Hood,* 327 *U.S.* 678, 682, 66 *S.Ct.* 773, 776, 90 *L.Ed.* 939, 943 (1946).

Comparison with our recent decision in *Velasquez* highlights the threshold nature of a dismissal for lack of standing. In *Velasquez,* we held that a federal court dismissal based on defendant's lack of capacity to be sued barred relitigation in the courts of this state. Such a dismissal falls within the ambit of dismissals for failure to state a claim; a court can determine capacity to be sued only after first determining that the controversy is justiciable and that the court will assume jurisdiction over it. Thus, a dismissal for lack of capacity to be sued, unlike a dismissal for lack of standing, constitutes a judgment "on the merits." *Velasquez, supra,* 123 *N.J.* at 507–08, 589 *A.*2d at 148. Standing must be resolved before a court proceeds to determine the merits of a suit.

In this regard, we find persuasive the analysis of the Eighth Circuit Court of Appeals in *McCarney v. Ford Motor Co.*, 657 *F.*2d 230 (1981). In *McCarney*, the principal stockholders of an automobile dealership had sued Ford Motor Company in federal district court alleging that Ford had unfairly compelled them to sell their dealership, and asserting a cause of action under the federal Automobile Dealers' Day in Court Act, 15 *U.S.C.A.* §§ 1221 to 1225. The court dismissed the McCarneys' claim on the ground that as individuals, they lacked standing to sue. According to the court, the proper party to invoke the statute was the corporation, not the individual shareholders. The McCarneys then filed a second action against Ford, setting forth the same factual allegations, but raising different theories of relief. The district court held that the action was precluded by the prior dismissal. *McCarney, supra,* 657 *F.*2d at 231–32.

The Eighth Circuit reversed, concluding:

> The justiciability doctrine, for the purposes of claim preclusion, should be analyzed in the same way as subject matter jurisdiction. *See* 1B Moore, Fed.Prac., ¶ 0.405[5], at 661 (1980). That is, a decision to dismiss based on any of the doctrines under the justiciability heading should preclude relitigation of the same justiciability issue but not a second suit on the same claim even if arising out of the identical set of facts.
>
> [*Id.* at 233.]

Acknowledging that the McCarneys would not be entitled to maintain a suit under the same federal statute, the court added that "where the second suit presents new theories of relief, admittedly based upon the same operative facts as alleged in the first action, it is not precluded because the first decision was not on the merits of the substantive claim." *Id.* at 234. Thus, the court held that "a dismissal based upon a lack of standing is not 'on the merits' of the underlying substantive claim and is not a bar to asserting another theory of relief based upon the same operative facts * * *." *Ibid.* Other courts agree. See *Cutler v. Hayes,* 818 *F.*2d 879, 888 (D.C.Cir. 1987) ("Standing ranks amongst those questions of jurisdiction and justiciability not involving an adjudication on the merits,

whose disposition will not bar relitigation of the cause of action originally asserted * * *." (footnote omitted)); *Continental Casualty Co. v. Canadian Universal Ins. Co.*, 605 *F.*2d 1340, 1342–43 (5th Cir.1979) (dismissal "for want of a judicial controversy between live litigants" does not preclude subsequent action), *cert. denied*, 445 *U.S.* 929, 100 *S.Ct.* 1317, 63 *L.Ed.*2d 762 (1980); *Marquis v. United States Sugar Corp.*, 652 *F.Supp.* 598, 600 n. 1 (S.D.Fla.1987) ("This action is not barred by the doctrine of *res judicata.* The court dismissed the FRO complaint for lack of standing and did not issue a decision on the merits."); *Ostrow v. Higgins*, 722 *P.*2d 936, 938 (Alaska 1986) (dismissal for mootness not adjudication on merits); *Transamerica Ins. Co. v. National Roofing, Inc.*, 108 *N.J.* 59, 63–64, 527 *A.*2d 864 (1987) (dismissal for mootness not adjudication on merits).

In *Mashpee Tribe v. Watt*, 542 *F.Supp.* 797, 800–01 (D.Mass. 1982), *aff'd*, 707 *F.*2d 23 (1st Cir.), *cert. denied*, 464 *U.S.* 1020, 104 *S.Ct.* 555, 78 *L.Ed.*2d 728 (1983), a district court held that a dismissal based on plaintiffs' inability to claim the protection of a statute "goes to the merits, not to the question of standing," and that such a dismissal therefore precluded subsequent litigation based on the same facts. That holding might be taken to suggest that in the present case the federal court dismissal of the individual plaintiffs' claims was not, in fact, for lack of standing, but rather a judgment on the merits. *Mashpee Tribe*'s conclusion that the prior judgment in that case was not for lack of standing, however, has been called into question. *Canadian St. Regis Band of Mohawk Indians v. New York*, 573 *F.Supp.* 1530, 1536 (N.D.N.Y.1983). Here, the federal court characterized its dismissal of Watkins' and McDaniel's claims as one for lack of standing, a characterization that we accept.

In the present action, the Appellate Division held that the federal court's dismissal for lack of standing was actually a judgment on the merits precluding relitigation. According to the Appellate Division, the federal court, in determining that

the individual plaintiffs lacked standing, had decided that "the individuals were not entitled to redress." We recognize that a determination that a plaintiff has not sustained a legally cognizable injury may mean both that the plaintiff does not have a sufficient interest to maintain an action and that the plaintiff would lose as a substantive matter if the court were to reach the merits. Merely because standing may be intertwined with substantive issues, however, does not mean that a dismissal for lack of "standing" constitutes a judgment "on the merits." Standing is a threshold requirement for justiciability. Here, the federal court dismissed plaintiffs' action because it believed that the proper enforcement of the civil rights laws required that the corporations, not the individual shareholders, should assert the claim. *See Erlich v. Glasner*, 418 *F*.2d 226, 227–28 (9th Cir.1969) (sole shareholders of corporation may not maintain civil rights action for corporation's damages). Thus, the federal court's dismissal for lack of standing determined neither that defendants had acted legally nor that plaintiffs had not been injured. The federal court simply determined that in the interest of sensible administration of the civil rights laws, the court should not reach the merits of the claims of the individual plaintiffs.

*Federated Department Stores, supra*, 452 *U.S.* 394, 101 *S.Ct.* 2424, 69 *L.Ed.*2d 103, on which the Appellate Division relied, is distinguishable. That case involved a dismissal for failure to state a claim on which relief could be granted pursuant to *Federal Rule of Civil Procedure* 12(b)(6), which unlike a dismissal for lack of standing, constitutes a decision on the merits. *Bell, supra*, 327 *U.S.* at 682, 66 *S.Ct.* at 776, 90 *L.Ed.* at 943.

The Appellate Division's reliance on *Gregory Marketing v. Wakefern Food Corp.*, 207 *N.J.Super.* 607, 504 *A.*2d 828 (Law Div.1985), is likewise misplaced. In *Gregory Marketing*, the court held that a federal court's dismissal for lack of standing of a plaintiff's private federal antitrust action preclud-

ed the plaintiff from asserting a similar action based on an identical provision of the state antitrust law. The Law Division reasoned in *Gregory Marketing* that the federal court ruling was "on the merits" because " '[a]ntitrust standing' and 'antitrust injury' are interrelated elements derived from the language of the statutory section providing a private remedy under the antitrust laws * * *." *Id.* at 618 n. 7, 504 *A.*2d 828. To the extent that *Gregory Marketing* holds that a determination of standing under a federal statute necessarily determines standing under a comparable state statute, we reject its reasoning. Our definition of standing is more generous than the federal definition. *Crescent Park Tenants Ass'n v. Realty Equities Corp.*, 58 *N.J.* 98, 107–08, 275 *A.*2d 433 (1971); *Urban League v. Township of Mahwah*, 147 *N.J.Super.* 28, 33, 370 *A.*2d 521 (App.Div.), *certif. denied*, 74 *N.J.* 278, 377 *A.*2d 682 (1977). A plaintiff may well lack standing under both statutes, but a federal court's prior determination that a plaintiff does not have standing under a federal civil rights statute should not preclude a state court from considering the issue of standing under state law.

Underlying that conclusion is the distinction between issue preclusion and claim preclusion. *Restatement (Second) of Judgments, supra,* § 17; C. Wright, *supra,* at 680. In brief, claim preclusion applies to all claims growing out of the same facts that could have been brought, but issue preclusion applies only to those issues that were actually litigated and decided. *Compare Restatement (Second) of Judgments, supra,* § 19 ("A valid and final personal judgment rendered in favor of the defendant bars another action by the plaintiff on the same claim.") *with id.* § 27 ("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim."). Unlike claim preclusion, issue preclusion can result from a judgment even if that judgment was not rendered on the merits. *Id.* § 20 comment b.

Under issue preclusion, therefore, "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Id.* § 27; *see Kremer v. Chemical Constr. Corp.*, 456 *U.S.* 461, 466 n. 6, 102 *S.Ct.* 1883, 1890 n. 6, 72 *L.Ed.*2d 262, 270–71 n. 6 (1982).

 Thus, a federal court dismissal based on a determination that plaintiffs lacked standing under the federal civil rights law, although not on the merits, precludes reconsideration of that issue. Such a determination would preclude relitigation of the federal standing issue. *Cutler, supra,* 818 *F.*2d at 888–89; *cf. Daigle v. Opelousas Health Care, Inc.,* 774 *F.*2d 1344, 1348 (5th Cir.1985) ("A dismissal for want of jurisdiction bars access to federal courts and is *res judicata* only of the lack of a federal court's power to act. It is otherwise without prejudice to the plaintiff's claims, and the rejected suitor may reassert his claim in any competent court."); *Restatement (Second) of Judgments, supra,* § 20 comment b, illustration 1 (if A's action dismissed for improper venue, then A not barred from asserting claim in another district, but precluded from relitigating in same district because venue issue already decided). Because issue preclusion is limited to those issues actually litigated and decided, the determination of standing under federal law does not estop plaintiffs from subsequently asserting state claims arising from the same facts.

-III-

Plaintiff's state court and federal court actions arose from the same factual occurrences. Hence, they constitute the same claim for res judicata purposes. Although the corporations, which were plaintiffs in the federal action, do not join as plaintiffs in the state action, the individual plaintiffs and all

defendants are identical. Thus, two of the requirements for claim preclusion, identity of parties and of claim, are satisfied.

In the federal courts, however, the complaint against Bally's was dismissed for insufficient service of process under *Federal Rule of Civil Procedure* 4(j). A dismissal on that ground is not a judgment on the merits for res judicata purposes. *Rule* 4(j) specifically provides for dismissal "without prejudice." Moreover, the opinion on which the order is based states that "plaintiffs will not be barred from refiling the action," and that the claim against Bally's "shall be dismissed, without prejudice, in accord with Fed.R.Civ.P. 4(j)." Consequently, we conclude that the federal dismissal of the complaint against Bally's is not entitled to claim preclusive effect.

Likewise, the dismissal of the individual plaintiffs' claims against Resorts was not a judgment on the merits. The federal court found that Watkins and McDaniel lacked standing to sue under the federal civil rights laws. As a threshold justiciability requirement, standing must be determined before a court may proceed to consider the substantive merits of the case. Here, the court never reached the merits. The federal dismissal for lack of standing, therefore, does not bar plaintiffs' subsequent state claims. In sum, we disagree with the conclusion of the Appellate Division that the federal judgments of dismissal were on the merits.

Initially, the federal courts dismissed the claims of the individual plaintiffs against Bally's and Resorts for improper service and lack of standing. The subsequent dismissal "with prejudice" on May 27, 1987, applied only to those claims remaining at that time, the claims of the corporate plaintiffs. Thus, the provision in the May 27, 1987, order that the dismissal is "with prejudice" could not affect the previously dismissed claims of the individual plaintiffs.

To conclude, the only issue precluded by the federal court judgment is the standing of the individual plaintiffs to maintain an action under federal law. The federal courts did not resolve

the question whether Watkins and McDaniel have standing under the New Jersey Constitution, the Casino Control Act, and the Law Against Discrimination. Plaintiffs deserve the opportunity to be heard on that issue. We state no view concerning plaintiffs' standing or concerning the merits of their claims. Our opinion goes no further than holding that because the federal court judgment was not on the merits, it does not preclude plaintiffs from raising their state claims in state court.

The judgment of the Appellate Division is reversed, and the matter is remanded to the Law Division.

*For reversal and remandment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI, and STEIN—7.

*Opposed*—None.