**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4415-14T4

VINCENT THOMAS,
individually; and VINCENT
THOMAS, derivatively on
behalf of and for the benefit
of FANCYLIMOS OF CHERRY HILL
INC., a business entity,

    Plaintiff-Appellant,

v.

CASIMIR SPOLNICKI, an individual;
FAVORITELIMOS.COM, a business
entity,

    Defendant-Respondent.

_____

        Argued February 14, 2017 — Decided September 14, 2017

        Before Judges Messano and Espinosa.

        On appeal from the Superior Court of New
        Jersey, Law Division, Ocean County, Docket No.
        L-3422-14.

        Grant S. Ellis argued the cause for appellant
        (Archer Law Office, LLC, attorneys; Mr. Ellis,
        on the briefs).

        Christian M. Towers argued the cause for
        respondent (Mr. Towers, attorney; Roger A.
        Barbour, on the brief).

PER CURIAM

Plaintiff Vincent Thomas and defendant Casimir Spolnicki once co-owned Fancylimos of Cherry Hill, Inc. (Fancylimos), a limousine company. Since 2008, they have been involved in four separate lawsuits regarding the disposition of Fancylimo's assets. This appeal concerns the dismissal of the fourth lawsuit, brought by plaintiffs in November 2014 against Spolnicki and Favoritelimos.com (collectively, defendants) (Suit 4). Plaintiffs appeal from an order granting defendants' motion to dismiss that complaint as barred under res judicata and the entire controversy doctrine.[1] For the following reasons, we reverse.

## I.

Fancylimos, a closely-held corporation, was formed in January, 2005. Thomas and Spolnicki each owned a fifty percent (50%) share in the company.

The first lawsuit was filed on December 2, 2008, by Spolnicki and Fancylimos against Thomas in the Superior Court, Chancery Division, Burlington County, and was later transferred to the Law Division (Suit 1). Because a copy of the complaint has not been provided, it is unclear what claims were asserted. A proof hearing

---

[1] Plaintiffs also appealed from an order denying their motion to disqualify defendant's attorney. As the attorney is now deceased, this issue is moot.

was held on May 1, 2009, which Thomas failed to attend. The default judgment sheds no light on what claims were asserted and the basis for the judgment, stating only, "Judgment is hereby entered against the defendant, Vincent Thomas in the amount of $165,386.40, in favor of the plaintiffs." This judgment provided the basis for defendants' subsequent successful claim that plaintiffs' Suit 4 complaint was barred by res judicata and the entire controversy doctrine.

Approximately one year later, on May 7, 2010, Spolnicki filed a Certificate of Dissolution to dissolve Fancylimos.[2] On September 1, 2010, Spolnicki and Fancylimos filed a second lawsuit against Thomas in the Superior Court, Chancery Division, Burlington County (Suit 2). The complaint alleged that Thomas "breached his fiduciary duties and abused his authority against the best interests of" Fancylimos. Specifically, the complaint accused Thomas of attempting to improperly transfer the title of three vehicles owned by Fancylimos to his own name. The relief sought was the dissolution of Fancylimos and an order from the court to transfer the titles of two vehicles to Spolnicki's companies upon payment in full.

---

[2] Plaintiff claims he has since restored the company, and that it is filing annual reports.

Thomas filed an answer that denied the allegations, and asserted two counterclaims, making the following allegations: Spolnicki (1) "unilaterally doubled his salary thereby reducing the profits of the corporation," (2) "locked [Thomas] out of the business," preventing Thomas "from having any input, control or knowledge of or over the income, disbursement or activities of the corporation," (3) acted "without cause and contrary to the agreement between the parties," (4) "retained all the profits of Fancylimos," and (5) failed to pay Thomas for services he performed for Fancylimos and which Spolnicki had promised to pay. Thomas demanded an accounting of Fancylimos, repayment to Thomas for various services and loans he provided Fancylimos, and a fifty percent pay out of all of Fancylimos's assets.

The trial court entered an order, dated October 20, 2010, that placed the title of the three vehicles at issue into escrow and required Thomas and Spolnicki to submit proof of payments made on the vehicles for the purpose of dividing the vehicles equitably between the parties. Spolnicki was granted possession of the vehicles in the interim.

Thereafter, a consent order, dated February 9, 2011, was entered that granted Spolnicki title of the three vehicles upon his satisfaction of the leases on the vehicles and permitted him

to sell the vehicles to purchase a limousine bus, the title of which would be held in escrow.

A second consent order, dated March 7, 2011, allowed Spolnicki to obtain immediate title to two of the vehicles. On August 4, 2011, an order was entered that dismissed Spolnicki's complaint without prejudice, leaving Thomas's counterclaims intact.

A third consent order, dated April 12, 2012, endorsed title of the third vehicle at issue to "Favorite Limos," a company owned by Spolnicki, "pending resolution of this matter." On the following day, the Chancery judge dismissed the matter without prejudice, directing that the parties could re-file the matter in the Law Division within 120 days.

Thomas refiled his claim in Ocean County (Suit 3) and then moved for a transfer of venue to Burlington County. The motion was granted by order dated December 7, 2012. This action was dismissed without prejudice for lack of prosecution in October 2013 because Thomas failed to appear at a scheduled arbitration hearing.

This appeal concerns the dismissal of Suit 4, brought by plaintiffs in November 2014 against Spolnicki and Favoritelimos.com (Suit 4). The complaint alleged Spolnicki improperly distributed Fancy Limo's assets following its dissolution and sought an accounting, distribution, and

appointment of receiver (count one). In addition, the complaint asserted the following claims: breach of contract (count two), unjust enrichment (count three), conversion of chattel (count four), breach of fiduciary duty (count five), and a constructive trust, replevin, disgorgement, and other equitable relief (count six). Defendants filed an answer, denying plaintiffs' claims, bringing two counterclaims, and demanding that the complaint be dismissed with prejudice on res judicata grounds. Defendants later filed a motion to dismiss the complaint, arguing that the matter was barred by res judicata.

The trial court granted defendants' motion, dismissing plaintiffs' complaint with prejudice under res judicata and the entire controversy doctrine. In its oral decision, the trial court found that a prior judge "made a full and final determination as to the disputes before him which were in the interpersonal relationships between the principals of [Fancylimos], Mr. Thomas and Mr. Spolnicki, and the disposition of those assets."

In their appeal, plaintiffs argue the trial court erred in dismissing the complaint on res judicata or entire controversy grounds and, in the alternative, the claims for money damages should not have been dismissed on those grounds.

Because the application of res judicata and the entire controversy doctrine are questions of law, see Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc., 192 N.J. 372, 386 (2007), we review these issues de novo. Ibid.

Under the doctrine of res judicata, a "cause of action between parties that has been finally determined on the merits by a tribunal having jurisdiction cannot be relitigated by those parties or their privies in a new proceeding." Velasquez v. Franz, 123 N.J. 498, 505 (1991). New Jersey law requires three basic elements for res judicata to apply:

> (1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one.
>
> [Watkins v. Resorts Int'l Hotel & Casino, 124 N.J. 398, 412 (1991).]

It is well settled that a "judgment of involuntary dismissal or a dismissal with prejudice constitutes an adjudication on the merits 'as fully and completely as if the order had been entered after trial.'" Velasquez, supra, 123 N.J. at 507 (quoting Gambocz v. Yelencsics, 468 F.2d 837 (3d Cir.1972)). Furthermore, Rule 4:37-2 states that "[u]nless the order of dismissal otherwise

specifies, . . . any [involuntary] dismissal . . . other than a dismissal for lack of jurisdiction, operates as an adjudication on the merits." R. 4:37-2.

Here, there are three judgments that carry a preclusive effect. The first is the default judgment against Thomas that resulted from Suit 1. Second, the consent order entered on March 7, 2011 in Suit 2 is a final judgment on the issue of title ownership of two vehicles, a 2006 Hummer H2 and a 2006 Infinity QX56, which was granted to Spolnicki. Third, the consent order entered on April 12, 2012 in Suit 2 is a final judgment on the issue of title ownership to a 2008 Chrysler 300, which was granted to "Favorite Limos," a company owned by Spolnicki and a current defendant in this matter.

Because it is clear from the record that the parties in Suit 1 and Suit 4 are the same, the only remaining issue is whether the claims in Suit 4 "grow out of the same transaction or occurrence" as the claims in Suit 1. Watkins, supra, 124 N.J. at 412.

To determine whether claims are precluded from relitigation by a preceding suit, res judicata and the entire controversy doctrine apply in tandem. See McNeil v. Legis. Apportionment Comm'n, 177 N.J. 364, 395 (2003). The entire controversy doctrine mandates that "all parties involved in a litigation should at the very least present in that proceeding all of their claims and

defenses that are related to the underlying controversy." Cogdell v. Hosp. Ctr. at Orange, 116 N.J. 7, 15 (1989). Thus, not only are parties to a litigation barred from subsequently bringing claims that were actually litigated, but are likewise barred from litigating "all relevant matters that could have been so determined." Watkins, supra, 124 N.J. at 412 (citations omitted); see also R. 4:30A (codifying the entire controversy doctrine) ("Non-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine . . . .").

The claim preclusion inquiry begins by determining whether the separate claims arise from the same or related transaction or occurrence. See DiTrolio v. Antiles, 142 N.J. 253, 267 (1995); Watkins, supra, 124 N.J. at 412. To determine whether claims are "related" for the purpose of claim preclusion, the test is:

> if parties or persons will, after final judgment is entered, be likely to have to engage in additional litigation to conclusively dispose of their respective bundles of rights and liabilities that derive from a single transaction or related series of transactions, the omitted components of the dispute or controversy must be regarded as constituting an element of one mandatory unit of litigation.
>
> [DiTrolio, supra, 142 N.J. at 268 (citations omitted).]

As we have noted, it is unclear what issues were litigated in Suit 1. Spolnicki asserts Suit 1 was brought "[d]ue to [Thomas's] various thefts and misappropriations of [Fancylimos] assets and monies." At a hearing before the trial court, counsel for defendants explained that, based on his understanding, the underlying issue of Suit 1 "was that Mr. Thomas stole a 67,000-dollar Rolls Royce limousine" and "there were some significant other LLC assets including thefts of money that we proved and [the trial judge] in Burlington County entered the judgment after a formal proof hearing." Defendants claim the final judgment settled "all remaining assets of the business previously operated by the parties" in Spolnicki's favor, an assertion that is not explicitly supported by the final judgment.

In response, plaintiffs argue that even assuming defendants' recollection of Suit 1 is correct, that fails to show that they were required to bring the six claims asserted in Suit 4 in Suit 1.

The first claim in Suit 4 seeks an accounting, distribution and appointment of a receiver, alleging that after dissolving Fancylimos, Spolnicki "kept all the assets of [Fancylimos]," "transferred them to . . . his new company" and "used the assets . . . to pay his personal debts." The second claim is for breach of contract, alleging Thomas and Spolnicki "had an oral

contract for running [Fancylimos]" which Spolnicki breached by "failing to make payments to [Thomas] and by seizing unilateral control of the corporation's assets and converting them to his own use." The third claim is for unjust enrichment, alleging "[d]efendants received a benefit from [Thomas], that is, his labor and assets." The fourth claim is for conversion of chattel, alleging that "Defendants took Plaintiffs' property, namely, the assets of [Fancylimos]" and "exercised dominion over Plaintiffs' property in a manner inconsistent with Plaintiffs' rights . . . in bad faith, intentionally, and with malice." The fifth claim is for breach of fiduciary duty, alleging that Spolnicki "violated this duty by appropriating the corporation's assets for himself." Finally, the sixth claim seeks a constructive trust, replevin, disgorgement, and other equitable relief, alleging that "Spolnicki used the wrongfully obtained assets to pay off his mortgage . . . [and] to fund FAVORITELIMOS.COM."

It is difficult to decipher whether any of these claims are precluded by the default judgment in Suit 1 or the orders in Suit 2. To the extent that plaintiffs' claims regard the vehicles at issue in the Suit 2 orders (the 2006 Hummer H2, 2006 Infinity QX56, and 2008 Chrysler 300), these claims are undoubtedly precluded by res judicata and the entire controversy doctrine.

However, even if it is true that Suit 1 concerned Thomas's "thefts and misappropriations of [Fancy Limo] assets and monies," and settled "all remaining assets of the business previously operated by the parties," allegations in the complaint filed in Suit 4 concern Spolnicki's conduct after the dissolution of Fancylimos, which occurred on May 7, 2010. Thus, the default judgment entered on May 11, 2009 could not have a preclusive effect over claims arising from events that had not occurred at that time.

We therefore conclude that the trial court erred in dismissing the complaint on res judicata and entire controversy grounds.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12

A-4415-14T4