JUSTICE TIMPONE, dissenting.
Liberality in standing should not be confused with automatic standing. In the context of land use disputes, the standing requirement protects the ability to develop property in accordance with the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -112, without interference by third parties who lack any cognizable interest. The majority's decision -- that tax lienholders who have not yet foreclosed on, and may never obtain a possessory interest in, a property have standing to challenge development on adjacent land -- crosses the generous line drawn by the MLUL's liberal standing requirement and opens the courthouse door to claimants with other similarly attenuated interests. Mindful that the difference in standards commands a difference in result in this matter, **421 and of the profound impact today's decision will have on future land use cases, I respectfully dissent.
I.
I adopt the majority's statement of facts and highlight pertinent portions from the record. Plaintiffs Cherokee LPC Land, LLC (Cherokee) and Linden 587, LLC (Linden 587) (collectively, the LLCs) dispute and challenge the City of Linden Planning Board's (the Board) grant of approval to Goodman North American Partnership Holdings, LLC, and Linden Property Holdings, LLC (collectively, Goodman) to redevelop heavy-industrial-zone property into an industrial campus with warehouses, office space, and distribution facilities. The LLCs claim unique interests in a nearby property -- a long-unremediated Superfund site (the Neighboring Property): Cherokee, as a one-dollar quitclaim deed holder, and Linden 587, as the assignee of tax sale certificates on the Neighboring Property.
Pursuant to the MLUL, the Board held a public hearing on Goodman's application. Cherokee attended the hearing and objected to Goodman's proposed development project, asserting ownership in the Neighboring Property. Cherokee sought an agreement from Goodman that its development would "provide appropriate access to their property" by means of preserving an existing easement. Cherokee also raised concerns regarding the development's impact on the Neighboring Property's Environmental Protection Agency (EPA) remediation and susceptibility to stormwater run-off.
The Board permitted Cherokee to present witnesses and considered Cherokee's objections. Ultimately, the Board unanimously approved Goodman's application, noting that Goodman agreed to build a thirty-five-foot roadway that would protect the Neighboring Property's easement to a nearby road. The Board also conditioned Goodman's application, in part, on receiving a hardship waiver from the New Jersey Department of Environmental Protection **422 (DEP) for stormwater quality and other DEP and EPA approvals.
Neither Linden 587 nor the assignor of its tax sale certificates, Cherokee Equities, LLC (Equities), attended the hearing. Instead, Linden 587 and Cherokee filed a complaint in lieu of prerogative writs in the Chancery Division, challenging the Board's resolution. Goodman filed a motion to dismiss the LLCs' complaint and, in the alternative, a motion for summary judgment.
*608 Highlighting the Neighboring Property's tortuous ownership history leading to Cherokee's purported quitclaim deed and Linden 587's assignment of tax liens for nominal value, Goodman argued that the LLCs lacked standing to file suit.
The trial court agreed. In its thorough and well-reasoned Statement of Reasons, the court concluded that Cherokee did not have an ownership interest in the Neighboring Property because the company that conveyed its quitclaim deed did not itself have a valid ownership interest. So, it dismissed Cherokee for lack of standing.
Linden 587 suffered a similar fate. Its only connection to the Neighboring Property is an inchoate ownership interest in unredeemed tax sale certificates for which it paid ten dollars and "other valuable consideration." Relying on this Court's precedent, the trial court carefully explained the rights of a tax sale certificate owner, including "the right to acquire title," and stressed that those rights are "subordinate to the property owner's right of redemption." (quoting Simon v. Cronecker, 189 N.J. 304, 319-20, 915 A.2d 489 (2007) ). The court noted that Linden 587 had no present possessory interest in the Neighboring Property through which it could obtain "interested party" status because it had not foreclosed on the property owner's right to redeem. For those reasons, the court concluded that Linden 587 also lacked standing and dismissed the LLCs' complaint with prejudice. For substantially the same reasons as the trial court, the Appellate Division affirmed.
**423 II.
Standing is a "threshold issue" that "neither depends on nor determines the merits of a plaintiff's claim." Watkins v. Resorts Int'l Hotel & Casino, 124 N.J. 398, 417, 591 A.2d 592 (1991). Our courts "will not render advisory opinions or function in the abstract or entertain proceedings by plaintiffs who do not have sufficient legal standing to maintain their actions." Al Walker, Inc. v. Borough of Stanhope, 23 N.J. 657, 660, 130 A.2d 372 (1957) (citation omitted). We also will not "entertain proceedings by plaintiffs who are 'mere intermeddlers,' or are merely interlopers or strangers to the dispute." Crescent Park Tenants Ass'n v. Realty Equities Corp. of N.Y., 58 N.J. 98, 107, 275 A.2d 433 (1971) (citations omitted). A litigant has standing only if the litigant demonstrates "a sufficient stake and real adverseness with respect to the subject matter of the litigation [and a] substantial likelihood of some harm ... in the event of an unfavorable decision." Jen Elec., Inc. v. County of Essex, 197 N.J. 627, 645, 964 A.2d 790 (2009) (first alteration in original) (quoting In re Adoption of Baby T., 160 N.J. 332, 340, 734 A.2d 304 (1999) ).
The court must determine standing before resolving the merits of a plaintiff's claim. Watkins, 124 N.J. at 418, 591 A.2d 592. See also Deutsche Bank Nat'l Tr. Co. v. Mitchell, 422 N.J. Super. 214, 224-25, 27 A.3d 1229 (App. Div. 2011) (finding that a plaintiff must have standing at the time of filing a complaint); see also Davis v. FEC, 554 U.S. 724, 734, 128 S.Ct. 2759, 171 L.Ed.2d 737 (2008) ("While the proof required to establish standing increases as the suit proceeds, the standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed.").
For land use disputes, the MLUL permits "[a]ny interested party [to] appeal to the governing body any final decision of a board of adjustment approving an application for development." N.J.S.A. 40:55D-17(a). The MLUL defines "interested party," in relevant part, as "any person ... whose right to use, acquire, or enjoy property is or may be affected by any *609 action taken under [the MLUL]." N.J.S.A. 40:55D-4.
I agree with the majority that the "right to acquire" is significant in resolving standing under the MLUL. But I depart from my colleagues in their approach to that significant issue in two critical respects. First, I disagree that the holder of a tax sale certificate has the "right to acquire" property within the meaning of the MLUL. Second, even if a speculative, contingent interest like a tax lien could be deemed a "right to acquire" property, that right is not affected unless the acquisition itself -- not the post-acquisition use or enjoyment of the property -- is or may be affected by the Board's action.
A.
The purpose behind the municipal sale of tax certificates is twofold. First, the sale of outstanding tax debt generates revenue for a municipality by providing "a mechanism to transform a non-performing asset into cash without raising taxes." In re Princeton Office Park, L.P. v. Plymouth Park Tax Servs., LLC, 218 N.J. 52, 62, 93 A.3d 332 (2014) (quoting Varsolona v. Breen Capital Servs. Corp., 180 N.J. 605, 610, 853 A.2d 865 (2004) ). Second, it gives "the property owner the opportunity to redeem the certificate and reclaim his land." Simon, 189 N.J. at 319, 915 A.2d 489.
The New Jersey Tax Sale Law, N.J.S.A. 54:5-1 to -137, "sets forth the procedure by which tax sale certificates are generated, purchased, and sold." Princeton Office Park, 218 N.J. at 62, 93 A.3d 332. For purchasers, tax sale certificates constitute an investment -- an "inchoate interest" -- in the burdened property comprised of three rights:
[1] the right to receive the sum paid for the certificate with interest at the redemption rate for which the property was sold; [2] the right to redeem from the holder a subsequently issued tax sale certificate; and [3] the right to acquire title by foreclosing the equity of redemption of all outstanding interests, including that of the property owner.
[ Id. at 63, 93 A.3d 332 (quoting Varsolona, 180 N.J. at 618, 853 A.2d 865 ).]
**425 Significantly, "[a]lthough the property is 'sold' as evidenced by a tax sale certificate, N.J.S.A. 54:5-46, a tax sale certificate is not an outright conveyance, and the certificate holder does not have title to the land." Caput Mortuum, L.L.C. v. S & S Crown Servs., Ltd., 366 N.J. Super. 323, 336, 841 A.2d 430 (App. Div. 2004) (emphasis added). Rather, a tax sale certificate holder has a conditional right to acquire title. Princeton Office Park, 218 N.J. at 63, 93 A.3d 332.
Forces beyond the control of the lienholder determine whether a tax lienholder can eventually acquire title. First and foremost, the conditional right to acquire is subject to the property owner's failure to redeem the certificate, ibid., and the entry of final judgment of the Superior Court foreclosing redemption, N.J.S.A. 54:5-86(a), -87. Property owners may exercise their right of redemption at any time until entry of that final judgment. R. 4:64-6(b); Simon, 189 N.J. at 319, 915 A.2d 489. And, during the court-determined redemption period, "others with an interest in the land (an heir, a prior tax certificate holder, a mortgagee, or an occupant)" may also redeem. Simon, 189 N.J. at 319, 915 A.2d 489 ; accord N.J.S.A. 54:5-54. Until the tax sale certificate holder receives and records a final judgment, the holder's right to acquire title remains subordinated to any interested party's right to redeem. See N.J.S.A. 54:5-86(a), -104.65; Simon, 189 N.J. at 318, 915 A.2d 489.
*610 A tax sale certificate holder's right to acquire title is also subject to the priority of liens. Municipal liens are "paramount" to all other liens on encumbered land except subsequent municipal liens. N.J.S.A. 54:5-9. For tax liens, "[a] subsequent tax sale certificate ... has priority over an earlier certificate, and the foreclosure of the later certificate can extinguish the earlier certificate." Lato v. Rockaway Township, 16 N.J. Tax 355, 363 (Tax 1997) (citation omitted); see also Town of Phillipsburg v. Block 1508, Lot 12, 380 N.J. Super. 159, 165-66, 881 A.2d 749 (App. Div. 2005) (suggesting that to protect its inchoate interest in property, a prior tax lienholder must redeem a later tax sale certificate before the subsequent holder obtains a judgment in **426 foreclosure). So, even the earliest tax lienholder must remain vigilant and perhaps purchase later tax certificates and any other municipal liens to retain its potential to acquire title.
Like any other investment, the purchase of a tax sale certificate carries risks. The Tax Sale Law, while affording the tax lienholder certain rights, does not protect the holder from those risks. The Tax Sale Law neither promises the holder that she will acquire title to the subject property nor assures the holder that, after receiving authorization to exercise her right to foreclose, she will receive a favorable return on her investment. The statute is intended "to promote the sale of tax sale certificates as a source of municipal revenue," Princeton Office Park, 218 N.J. at 56, 93 A.3d 332 (emphasis added), not to shield lienholders from uncertainties natural to a tax sale certificate investment. Risks like the need to purchase subsequent liens to preserve a priority interest, a decline in property value or worthless property, repair costs after foreclosure, and municipal fines and condemnation are inherent in a tax sale certificate investment. Development on adjacent property is no different. A tax sale certificate confers a right to acquire title that is packaged with -- not separate from -- those risks.
I am not persuaded, based on the foregoing, that Linden 587 has the right to acquire title to the Neighboring Property. The MLUL speaks only to the right to acquire and not a contingent right to acquire title to property. Here, the record reflects that Linden 587 had not obtained and recorded a final judgment foreclosing the title holder's right to redeem the Neighboring Property before filing suit. Cf. N.J.S.A. 54:5-86(a), -87. Counsel's representation at oral argument that Linden 587 has foreclosed on one of its three tax sale certificates is inconsequential. Standing is an issue that "must be resolved before a court proceeds to determine the merits of a suit." Watkins, 124 N.J. at 418, 591 A.2d 592 ; see also Mitchell, 422 N.J. Super. at 224-25, 27 A.3d 1229 (suggesting that any post-complaint foreclosure cannot retroactively confer standing).
**427 Obtaining a final judgment before filing a complaint is imperative because it cuts off the title holder's right to redeem, N.J.S.A. 54:5-86(a), and it prevents subsequent lienholders from acquiring a priority interest, which would complicate Linden 587's future right to foreclose, Town of Phillipsburg, 380 N.J. Super. at 165, 881 A.2d 749. Without that final order, Linden 587's ability to acquire is entirely dependent on the absence of intervening forces that may compromise its interest in the Neighboring Property. When it filed its complaint, Linden 587 had no right to acquire title to the Neighboring Property, or even to exercise its right to acquire the Neighboring Property. Whether that right will be realized remains speculative. And it is certainly apparent that it has no present rights to use and enjoy that property.
*611 B.
Even if I agreed with the majority that the MLUL could be read to confer interested-party status on persons with a contingent right to acquire title, I would not agree with its determination that Linden 587 has standing. Linden 587's right to acquire the Neighboring Property has not been -- nor could it be -- affected by the challenged Board action.
An interested party is one whose right to acquire property "is or may be affected by any action taken under [the MLUL]." N.J.S.A. 40:55D-4. Here, Linden 587 challenges the Board's decision to grant Goodman's application for development. It logically flows that Goodman's development project on the Property must, at the very least, have the potential to affect Linden 587's right to acquire the Neighboring Property. It does not. Linden 587's right to foreclose on the Neighboring Property owner's right to redeem and later acquire title through that foreclosure is in no way affected by development projects on adjacent land.
To be sure, Linden 587 may decide not to exercise its right to acquire the Neighboring Property as a result of the Goodman project, but it still has the ability to assert that right. Simply put, Linden 587 can exercise its right to acquire the Neighboring **428 Property whether or not the Board approves the Goodman project. Whether the Neighboring Property is affected by Goodman's development is a risk Linden 587, as an investor without present title to the property, assumed. Because Linden 587's conditional right to acquire is not and could not be affected by the Board's approval, Linden 587 cannot be an interested party under the MLUL.
The essence of the LLCs' complaint is not that the Goodman project will compromise their putative right to acquire, but rather that -- assuming they can exercise that right -- the project will infringe on their ability to use and enjoy the Neighboring Property. In accepting that argument, the majority applies a two-level analysis to the MLUL's one-level definition of "interested party" as a person "whose right to use, acquire, or **424 enjoy property is or may be affected by any action taken under [the MLUL]." Ibid. In other words, the majority's decision requires the following analysis: (1) Is there a right to acquire property?; and (2) If so and if that right is exercised, will development on adjacent land affect the future rights to use and enjoy the property?
I reject the majority's two-step analysis. A plain reading of N.J.S.A. 40:55D-4 suggests that future or speculative rights do not satisfy the interested-party requirement. The statute requires that a person's "right to use, acquire, or enjoy property" "is or may be affected by any action taken" under the MLUL. A person need not have a present injury; it suffices that the asserted right "may be affected." But that contingency arises only if the person has a present property right to assert at the outset. To interpret the statute to include speculative or future rights renders the statute superfluous, conferring interested-party status and standing to anyone that might have a protected property right that might be affected sometime in the future. But, the statute plainly requires a party to have a present -- not future -- right to use, acquire, or enjoy property, and without it, the party does not have standing.
The three protectable property interests set forth in N.J.S.A. 40:55D-4 are distinct, as evidenced by the statute's use of the word **429 "or." The two other bases for standing listed in the statute are the right to use and the right to enjoy. Did the plaintiffs' tax sale certificate give them the right to use the property? No. Did it give them the right to enjoy the property? No. *612 It is the claimant's present rights -- not speculative future rights -- that are necessary to satisfy the interested-party requirement.
The majority's theory of standing appears to rest on Linden 587's right to use the Neighboring Property -- its "limited" "right to enter onto the property to address certain conditions." That theory, in turn, rests on a slender reed: N.J.S.A. 54:5-86(c). N.J.S.A. 54:5-86(c) permits a tax sale certificate holder of abandoned property to enter that property "to make repairs, or abate, remove or correct any condition harmful to the public health, safety and welfare, or any condition that is materially reducing the value of the property." Put otherwise, tax sale certificate holders do not have a right to enter property that is not abandoned. And, even if the property "meets the definition of abandoned," the holder may not enter until it provides "written notice to the owner by certified mail return receipt requested." N.J.S.A. 54:5-86(c).
Here, the record is devoid of any evidence that the Neighboring Property was abandoned, as the majority concedes. Nothing in the record shows that the Neighboring Property meets the definition of abandoned under N.J.S.A. 55:19-81. Section 86 therefore does not provide a basis for standing in this case. And, even if the Neighboring Property were statutorily abandoned, I question whether a limited right to abate a public safety concern or material reduction in property value can be equated with the "right to use" property under N.J.S.A. 40:55D-4. Regardless, we need not determine whether the neighboring property is abandoned under the statutory definition. The parties did not raise abandonment under N.J.S.A. 54:5-86(c) to our Court or the courts below in their briefs or during oral arguments.
Linden 587 had neither the right to use nor the right to enjoy the Neighboring Property when it filed suit. See Michael G. Pellegrino & Ralph P. Allocca, **430 Tax Certificates: A Review of the Tax Sale Law, 26 Seton Hall L. Rev. 1607, 1620 (1996) ("A tax certificate represents only a lien; no immediate possessory rights are transferred until foreclosure is completed. Thus, a private certificate holder is not entitled to enter upon the underlying property to analyze, manage or protect it." (footnotes omitted) ). So, whether Linden 587 has standing hinges on whether its claimed right to acquire is or may be affected by the Board's action. It follows that, because Linden 587's inchoate, contingent right to acquire the Neighboring Property was not and could not be affected by the Board's action, Linden 587 did not have standing.
New Jersey courts often liberally construe the standing requirements to grant standing. Crescent Park Tenants Ass'n, 58 N.J. at 107-12, 275 A.2d 433 ; Spinnaker Condo. Corp. v. Zoning Bd. of Sea Isle City, 357 N.J. Super. 105, 110-11, 813 A.2d 1282 (App. Div. 2003). But the majority's decision takes liberality a step too far. Instead of relying on the MLUL's plain language to arrive at the most logical conclusion, the majority has transformed a list of present rights into a fusion of present and future rights to confer standing on a class of third parties never envisioned by the Legislature. Standing should only be accorded to true stakeholders and, in my mind, according to the facts of this case, Linden 587 is not one of them.
We should not graft upon the statute additional rights not intended by the Legislature or met by Linden 587. Nor should we afford plaintiff a fresh opportunity to establish standing by remanding to the trial court for further proceedings. The nature of the hearing on remand will be novel in light of our traditional recognition *613 of standing as a "threshold" issue that a court must determine at the outset of a lawsuit. Watkins, 124 N.J. at 417-18, 591 A.2d 592. Addressing the standing inquiry at the first stage of a plaintiff's claim is crucial because the answer determines whether the court has "power to hear the case." Id. 418, 591 A.2d 592. Linden 587 had the opportunity to demonstrate its standing in its bare-bones, four-page complaint, its brief in response to the **431 motion to dismiss its complaint, and during oral argument at the motion hearing. It failed to do so. Failure of Linden 587 to properly plead under the requisite statutes or properly defend in motion practice or in oral argument are not a cause for remand. Linden 587's failures are of its own design and may be causes for its lack of standing. For those reasons, I depart from my colleagues in the majority that a remand is warranted here.
III.
To me, the fact that this land use standing issue -- in 2018 -- is an issue of first impression suggests tax sale certificate holders have not previously sought to use our courts to thwart development projects related to neighboring properties of land they may or may not acquire. No longer. Going forward, I predict an onslaught of new land use disputes in our Superior Court that will stall development projects and encourage other attenuated interested parties to follow suit. For all of those reasons, I respectfully dissent.